Charles **BROWN** and Ramadan Shabazz, Plaintiffs

v.

Michael **CORSINI**, Wayne Whisler, Jeffrey Fallon, Sean Maderios, Kevin Kennedy, and Kristie Ladouceur, Defendants.

Civil Action No. 07–11663–RCL.

United States District Court, D. Massachusetts.

Sept. 29, 2009.

---

David J. Rentsch, Commonwealth of Massachusetts, Department of Correction, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. *INTRODUCTION*

On September 4, 2007, the plaintiffs Charles Brown ("Brown") and Ramadan Shabazz ("Shabazz"), (collectively, the "Inmates") initiated a pro se action pursuant to 42 U.S.C. § 1983 against six Bay State Correctional Center ("Bay State") prison officials: defendants Michael Corsini ("Corsini"), Superintendent; Wayne Whisler ("Whisler"), Director of Engineering; Jeffrey Fallon ("Fallon"), Inner Perimeter Security; Sean Maderios ("Maderios"), Director of Security; Sergeant Kevin P. Kennedy ("Kennedy"), Disciplinary Officer; and Kristie Ladouceur ("Ladouceur"), Grievance Coordinator (collectively, the "Prison Officials").

Brown and Shabazz are prisoners who worked in the Bay State Correctional Center ("Bay State") inmate maintenance shop until May 2007 when they were both transferred to the Massachusetts Correctional Institution in Concord, Massachusetts ("MCI–Concord").[1] The complaint alleges that the Prison Officials coerced Bay State maintenance shop inmates to install security screens on other inmates' windows within the facility by threatening to transfer anyone who refused the assignment. Brown and Shabazz claim that Bay State prison officials were so intent on reducing labor costs that they ignored the potential risk of harm to inmate maintenance workers from other prisoners who may have objected to the screen installations. Brown and Shabazz both voiced objections to the work assignment. Shabazz filed multiple formal grievances challenging the

1. Currently, Brown is confined at the Massachusetts Correctional Institution in Norfolk ("MCI–Norfolk"), and Shabazz is confined at the Old Colony Correctional Center ("Old Colony") in Bridgewater, Massachusetts.

policy. The Inmates allege that the Prison Officials retaliated against them for asserting their constitutional rights by transferring them to alternative facilities and denying them due process during disciplinary hearings. Finally, the Inmates claim that they were subjected to invidious racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

Brown and Shabazz seek declaratory and injunctive relief, including transfer back to the Bay State facility and restoration of their single room status, expungement of their disciplinary records, and reinstatement of employment at their prior pay rate. In addition, they seek restitution in the amount of the lost wages with interest, good time credit, and compensatory and punitive damages.

Pursuant to 28 U.S.C. § 1915A, the Court screened the complaint[2] and entered a Memorandum and Order on October 30, 2007, wherein the Court construed the cognizable claims. (Doc. No. 6). Without commenting on the merit of the claims, the Court held that the complaint alleged cognizable claims for retaliatory transfer, deliberate indifference, and due process violations stemming from the disciplinary hearings and sanctions imposed. *Id.* at 7–9. The Court held the Inmates' claims against Maderios and Ladouceur as well as their claims for restoration of good time credit were not cognizable but granted the inmates an extension of time to show cause why these claims should not be dismissed. *Id.* at 9, 10–13.

Shabazz filed a Motion for Leave to Proceed in forma pauperis (Doc. No. 9) and responded to the Court's Memorandum and Order in an effort to show cause why the claims against Ladouceur and Maderios should not be dismissed (Doc. No. 12). On February 7, 2008, the Court entered a Memorandum and Order denying Shabazz's Motion for Leave to Proceed in forma pauperis and dismissing the claims against Maderios and Ladouceur. (Doc. No. 16).

On November 14, 2008, the remaining defendant Prison Officials (Corsini, Whisler, Fallon, and Kennedy) filed a Motion for Summary Judgment (Doc. No. 37) with supporting Affidavits and the requisite Local Rule 56.1 Statement of Facts (Doc. No. 38). Shabazz filed an Opposition to the Defendants' Motion (Doc. No. 50) and attached an Opposition to the Defendants' Statement of Facts (Doc. No. 52) and a supporting Affidavit (Doc. No. 53).

## A. Factual Background

The facts are taken from the Defendants' Statement of Facts ("Defs.' SOF"), Plaintiff's Opposition to Defendant's Statement of Facts Regarding Ramadan Shabazz[3] ("Pl.'s SOF"), and supporting documents.[4] On November 3, 2005, Whisler

2. Pursuant to 28 U.S.C.A. § 1915A, the Court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Upon review, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint" if the complaint fails to state a claim for which relief may be granted or seeks monetary relief from a defendant who is immune from the relief sought. *See e.g. Con-*

*ley v. Massachusetts*, No. 09–10865, 2009 WL 2096207, at *4 (D.Mass. July 7, 2009) (Gertner, J.) (dismissing action *sua sponte* because prisoner failed to state cognizable claims upon which relief may be granted).

3. Plaintiff Brown did not file a Statement of Facts.

4. The Court takes all facts in favor of the nonmovants, Brown and Shabazz. *Cordi–Allen v. Conlon*, 494 F.3d 245, 250 (1st Cir.2007). Nevertheless, where a plaintiff fails to oppose

called a meeting of the Bay State inmate maintenance workers. (Defs.' SOF 1). Shabazz and Brown were both in attendance. *Id.* Whisler informed them that they would be installing metal security screens on the windows of the inmate housing units. *Id.* Whisler announced that if the maintenance workers refused this work assignment, they would be disciplined and transferred to a higher security prison. *Id.*

### 1. Facts regarding Shabazz

Shabazz claims that before the November 2005 meeting, he had been protesting that inmates are prohibited by policy from performing security work and filed a grievance to this effect. (Pl.'s SOF 2). Shabazz maintains that his grievance led to the group meeting with Whisler. Shabazz alleges that Whisler used coercive, intimidating language during the November 2005 meeting stating:

> If you can't deal ... and refuse to do this [sic] security work of Bay State by installing these security screens upon inmates [sic] windows, you will receive a disciplinary report for refusing a direct order and you will be transferred to a higher level institution immediately. You will fear me and Bay State Administration more than any inmates would put fear into you. Me ... and my staff ... will do more to you then [sic] any inmates or group of inmates would do to you or harm you for doing security work for Bay State. Your feet will not touch the floor you will be transferred that quickly. Do you all ... hear that?

(Pl.'s SOF 2–3).

Six days later, on November 9, 2005, Shabazz filed a grievance and requested to

be reassigned to a new job in the Property Department. (Defs.' SOF 1). Shabazz was instructed that he was approved for "alternative work re-assignment ... when positions are made available." *Id.* Shabazz claims that jobs in the property department were available, however, the Prison Officials intentionally did not reassign him to those alternate jobs. (Pl.'s SOF 5).

There is a dispute between the parties about what happened during the period following Whisler's November 2005 group meeting. The Prison Officials contend that Shabazz subsequently worked on the inmate maintenance crew for another 18 months and periodically installed security screens. (Defs.' SOF 2). Shabazz claims he never installed the screens and indicated that this action would not have been filed had he been willing to install the security screens. (Pl.'s SOF 5).

Shabazz filed a grievance with the prison administration arguing that as an inmate, he should not be required to perform "security work." (Defs.' SOF 2). His grievance was denied and he appealed. In a written decision dated December 1, 2005, Corsini denied Shabazz's appeal. *Id.* Corsini wrote:

> GRIEVANCE IS DENIED. YOU ARE TO DO AS DIRECTED BY MAINTENANCE STAFF. THERE IS NO POLICY WHICH PROHIBITS THE TYPE OF WORK WHICH YOU RECENTLY HAVE BEEN PERFORMING, I.E. MANUFACTURE AND INSTALLATION OF EXPANDED METAL WINDOW SCREENS. AS SUPERINTENDENT, I WILL MAKE THE DETERMINATION OF WHICH SECURITY WORK INMATE

---

facts set forth in Defendants' statement, those facts may be deemed admitted. *Cochran v. Quest Software, Inc.,* 328 F.3d 1, 12 (1st Cir. 2003); D. Mass. Loc. R. 56.1 ("Material facts of record set forth in the statement required

to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

WORKERS ARE TO BE RESTRICTED FROM. (Capitalized as in original). (Defs.' SOF 2). On March 13, 2007, Shabazz and Whisler had a conversation about the screen installation assignment. Whisler stated that he thought it was appropriate for inmates to perform this type of work. *Id.* Shabazz stated that he was "not refusing to do this job assignment," but that he just wanted "another job assignment other than hanging these security screens." *Id.* The same day, Shabazz filed a second grievance on this matter and it was denied. Shabazz's appeal was likewise denied by Corsini. *Id.*

Shabazz alleges that he and Brown were not the only inmates concerned about the policy impropriety and potential danger this type of work posed. Shabazz submitted documentary evidence of grievances filed by another maintenance worker, an inmate named Jerry Dunton ("Dunton"). According to Dunton's grievance, dated March 13, 2007, Whisler told the inmate maintenance workers that they were to install the window grates on the windows and that if they refused, they "would lose their jobs in maintenan[ce] and b[e] removed from Bay State." (Pl.'s SOF, Ex. # 051). Dunton said that Whisler made it clear that he did not want a response from the crew, so Dunton "kept quiet," performed the installations as instructed, and later filed the grievance. *Id.* Dunton also indicated that he was concerned for his personal safety based on the assignment and his vulnerability as an inmate with a life-sentence.

> Since I am a first-degree lifer and lifers' statis [sic] is less than secure … as evidenced by their direct threat to lug[5] men to another institution in this incident; other inmates seeing me and others doing security work can cause a

safety factor for me in the future, whether here or some other location.

*Id.*, Ex. # 052. Dunton was denied his initial grievance by Corsini and appealed. Ladouceur affirmed Corsini's denial of Dunton's grievance on April 25, 2007, rejecting Dunton's concerns about whether the assignment violated corrections' policy:

> [T]here are no regulations, policies or procedures that prohibit inmates from working on fabrication and installation of metal security screening. The work performed by you was within the authority of the Superintendent [Corsini]. Inmates assigned to a maintenance department are required to perform the work assigned by their supervisor and do not have the option to choose the projects they work on.

*Id.*, Ex. # 050. Ladouceur stated that prison security would not be compromised because inmates will work on the project under the supervision of corrections staff. *Id.*

Shabazz filed a second grievance regarding the same subject on March 13, 2007. (Defs.' SOF 2). It was denied and appealed to Corsini who upheld the denial. *Id.* at 2–3. In a decision dated April 29, 2007, Corsini wrote:

> This same issue was previously grieved by you in 2005. The grievance was denied by the Superintendent and is currently under review by the Departmental Grievance Coordinator. However to address your concerns again, there are no provisions in any policy, CMR, or statute governing the operation of this facility that prohibits you from being supervised by correctional staff in the manufacture and installation of these ex

---

**5.** "Lug" is slang for a physical transfer of an inmate.

panded metal window screens. Again, this grievance is denied.

*Id.* at 3.

Shabazz wrote letters exhorting public officials and journalists to investigate the practice of having inmates install security measures. On April 18, 2007, he sent letters to then Massachusetts state senator Jarret Barrios, Boston Globe columnist Adrian Walker, and the Phantom Prisoner Newspaper. (Shabazz Aff. ¶ 23). The letter to Adrian Walker emphasized that "[p]ublic safety is put at risk" by these policies and stated that Shabazz was "quite sure that the Department of Corrections has policies or Code of Mass. Regs. prohibiting inmates from performing such security work." *Id.*, Ex. # 036.

On May 14, 2007, Whisler ordered Shabazz to install security screens on one of the inmate housing units. (Defs.' SOF 3). Shabazz refused. *Id.* Whisler asked whether Shabazz had a medical reason for refusing the order, and Shabazz answered that there was no medical reason for his refusal. *Id.* Whisler repeated his order; Shabazz again refused. *Id.* Whisler then called the Shift Commander and Shabazz was escorted to a holding cell. *Id.* Later that day, Shabazz was physically transferred to MCI–Concord. *Id.* Shabazz alleges that he was transferred to a higher security facility, however the Prison Officials maintain that it was a lateral transfer, and that Bay State and MCI–Concord are both designated as medium-security facilities. *Id.*

Whisler wrote a disciplinary report regarding the incident with Shabazz. (Def.'s SOF 3). Shabazz received the report on May 22, 2007. (*Id.* at 3–4). Shabazz requested witnesses and evidence in preparation for his disciplinary hearing. *Id.* at 4. Shabazz's request for witnesses was denied, but Shabazz was provided with two incident reports. *Id.*

Shabazz was charged with three offenses. (Defs.' SOF 4). Each was a "Category 3 offense" according to the Department's Inmate Discipline policy, 103 Code Mass. Regs. § 430.24 (2006). *Id.* Shabazz was charged with:

> 3–05: Refusing a direct order by any staff member;
>
> 3–27: Conduct which disrupts the normal operation of the facility or unit; and,
>
> 3–29: Attempting to commit any of the above offenses, making plans to commit any of the above offenses or aiding another person to commit any of the above offenses shall be considered the same as the commission of the offense itself.

A disciplinary hearing was held on these three charges on June 15, 2007. *Id.* Another Bay State official, Matthew Phelan ("Phelan"), heard the case. *Id.* Shabazz was present at the hearing, and both he and Whisler testified. *Id.* Phelan found Shabazz guilty of one charge, a violation of 3–05 (refusing a direct order by any staff member). *Id.* at 4–5. Shabazz was not sanctioned for this offense and the remaining charges were dismissed. *Id.* at 5. Shabazz appealed the decision. *Id.* On July 9, 2007, Corsini denied Shabazz's appeal. *Id.* Subsequently, Shabazz was transferred to the Old Colony facility.

### Facts regarding Brown [6]

Brown was also present at the November 2005 meeting where Whisler addressed the Bay State inmate maintenance workers. (Defs.' SOF 5). Whisler contends that after this meeting, Brown con-

---

6. As discussed *supra,* Brown did not submit a separate opposition to the Defendants' Statement of Facts. Therefore, the facts from the Defendants may be taken as admitted under Local Rule 56.1. *Cochran,* 328 F.3d at 12.

tinued to work on the inmate maintenance crew, and periodically installed the security screens. *Id.*

On May 2, 2007, Brown was discussing his unease at having to install the security screens on inmates' windows. (Defs.' SOF 5–6) When Maderios, the Director of Security, reminded him of the consequences of refusing to perform the installations, Brown retorted, "You better get the bus ready, I'm all packed and ready to go." *Id.* Fallon interviewed Brown who admitted that he had made the statement, and that he believed that inmates should not have to help install the grates on inmates' cell windows. *Id.* at 6. Brown told Fallon that he was catching "heat" from other Bay State inmates. *Id.* Fallon asked Brown if he was refusing an order. *Id.* Brown said that he was willing to be removed from Bay State because he was unwilling to install the screens, stating "[Y]ou do what you have to do." *Id.*

Fallon wrote a disciplinary report regarding this incident. (Defs.' SOF 6). Brown received the report on May 7, 2007. *Id.* Brown requested witnesses and evidence in preparation for his disciplinary hearing. *Id.* at 7. Kennedy provided Brown with an incident report and granted his request for two witnesses (Fallon and another officer, Paul Labouliere). *Id.* Brown was charged with:

3–05: Refusing a direct order by any staff member;

3–27: Conduct which disrupts the normal operation of the facility or unit; and,

3–29: Attempting to commit any of the above offenses, making plans to commit any of the above offenses or aiding another person to commit any of the above offenses shall be considered the same as the commission of the offense itself.

A disciplinary hearing was held on June 6, 2007. *Id.* Phelan heard the case. *Id.*

Brown was present at the hearing; he, Fallon and Labouliere testified. *Id.* Phelan found Brown guilty of one charge, a violation of 3–27 (conduct which disrupts the normal operation of the facility or unit). *Id.* at 7–8. Phelan sanctioned Brown for this violation, imposing a 30–day loss of canteen privileges. *Id.* at 8. The remaining charges were dismissed. *Id.* Brown appealed the decision. On July 9, 2007, Corsini denied Brown's appeal. *Id.* Corsini's denial stated, "You made it quite clear that you intended not to perform the work. I view your actions as inciteful and disrupting towards the inmate maintenance work force of this facility." *Id.*

Brown is currently confined at the Massachusetts Correctional Institution in Norfolk ("MCI–Norfolk"). (Defs.' SOF 8). The Prison Officials contend MCI–Norfolk and MCI–Concord are designated as medium-security prisons and that Brown's transfer to MCI–Concord was a transfer to a lateral facility. *Id.* Fallon's disciplinary report noted, however, that "[i]nmate Brown was subsequently returned to higher custody." *Id.* at 6.

### B. Federal Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## II. *ANALYSIS*

### A. Summary Judgement Standard

Summary judgment is appropriate only where there are no genuine issues of material fact and the movant is "entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). It is not appropriate where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With regard to the

materiality of the facts, summary judgment may properly be denied where there are facts in dispute that "might affect the outcome of the suit under the governing law." *Id.* Although the court must consider the facts and inferences in the light most favorable to the nonmovant, the court is not to give weight to conclusory allegations or pure conjecture. *Cordi–Allen v. Conlon,* 494 F.3d 245, 250 (1st Cir.2007).

### B. Retaliatory Transfer

■ The Inmates' primary claim is that the Prison Officials transferred them to a higher security prison in retaliation for exercising their constitutional rights to file grievances and protest the screen installation assignment. The Prison Officials contend that the record does not support the Inmates' allegation that the disciplinary actions were retaliatory in motive. The Prison Officials also argue that the Inmates' retaliatory transfer claim lacks merit because they were transferred laterally and the decision of prisoner placement within a correctional system or specific facility is a matter of administrative discretion.

■ The Supreme Court has held that the constitutional rights of prisoners "are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy,* 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In assessing the reasonableness of the disputed regulation, the Court considers the following factors: 1) a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," 2) a consideration of whether there are alternative means open to prisoners that allow them to exercise the same right, and 3) an assessment of the impact the constitutional right's accommodation will have on prison staff, other inmates, as well as the general allocation of prison resources. *Id.* at 89–90, 107 S.Ct. 2254. Additionally, "an absence of ready alternatives" may further evidence the reasonableness of the disputed regulation. *Id.* at 90, 107 S.Ct. 2254.

■ "A prisoner does not have a right to a hearing before being transferred; indeed he can be transferred for no reason at all." *McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir.1979). Prison officials have "extremely broad" discretion to transfer prisoners, although "they may not transfer an inmate in retaliation for his exercise of a constitutional right." *Partelow v. Massachusetts,* 442 F.Supp.2d 41, 51 (D.Mass. 2006) (Ponsor, J.) (quoting *McDonald,* 610 F.2d at 18). "[A]ctions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms." *Ferranti v. Moran,* 618 F.2d 888, 892 n. 4 (1st Cir.1980). "Otherwise constitutional conduct may be actionable if taken to discipline someone for exercising their constitutionally protected rights." *Shaheed–Muhammad v. Dipaolo,* 138 F.Supp.2d 99, 105 n. 18 (D.Mass.2001). (Gertner, J.) (quoting *Ferranti,* 618 F.2d at 892 n. 4).

■ The Inmates face a high burden to sustain a trialworthy retaliation claim. To prevail on a retaliation claim, an inmate must establish

(1) he engaged in constitutionally protected conduct,

(2) prison officials took an adverse action against him

(3) with the intent to retaliate against him for engaging in the constitutionally protected conduct, and

(4) he would not have suffered the adverse action "but for" the prison officials' retaliatory motive.

*Partelow,* 442 F.Supp.2d at 51.

■ It is undisputed that Brown and Shabazz filed grievances protesting their assignment to work on the security window screens. Prisoners "undoubtedly ha[ve] a First Amendment right 'to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.'" *Shabazz v. Cole,* 69 F.Supp.2d 177, 197 (D.Mass.1999) (Bowler, M.J.) (quoting *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)). The Inmates, who both filed grievances expressly protesting their assignment to install the window screens, were engaged in constitutionally protected conduct. Their transfer occasioned a loss in wages and benefits, including good time credit and seniority status. If one takes all the facts and inferences in favor of Brown and Shabazz, their transfer to a different facility constitutes an adverse action.

Notwithstanding that the Inmates can establish that they were engaged in constitutionally protected activity when they suffered an adverse action, they cannot survive summary judgment because they are unable to demonstrate that "but for" the alleged retaliatory motive of the prison officials, they would not have been transferred. It is undisputed that Brown and Shabazz refused to perform the work assignments. According to Shabazz's affidavit, the Inmates were given a direct order from prison staff on September 18, 2006, which they refused, as they had on previous occasions. (Shabazz Aff. ¶ 15). Even if their refusal was born of a conscientious objection rather than impudence, the Inmates' behavior violated prison regulations. Their own admissions substantiate the disciplinary reports.

The Prison Officials contend that the chronology of events does not support an inference of retaliation. Shabazz filed at least two grievances regarding the security screen assignment. He was transferred to MCI–Concord two months after his second grievance was filed and the day he refused Whisler's order to install the window screens after admitting he had no medical reason for refusing the order. (Defs.' SOF 2–3). Nonetheless, temporal proximity is not sufficient alone to prove retaliatory motive. *Reeves v. Wood,* 206 Fed.Appx. 368, 370 (5th Cir.2006) (holding that temporal proximity is insufficient to establish an improper retaliatory motive where the disciplinary report is substantiated, and therefore an inmate cannot defeat summary judgment simply by pointing to an earlier grievance).

Additionally, the documentary evidence relating to their colleague Dunton substantially undermines the Inmates' retaliation claim. Dunton also filed several grievances protesting the window screen installation; however, he was never transferred to another facility. According to the record, Dunton filed grievances but continued to perform the assignment as instructed even though he too suspected the installations violated state law or prison safety regulations. The difference between Dunton and the Inmates is that they not only challenged the policy, they expressly refused the work assignment. Brown and Shabazz fail to demonstrate that but for retaliation due to their filing of grievances, they would not have suffered the adverse action.

Accordingly, the Prison Officials' motion for summary judgment is granted with respect to the Inmates' retaliatory transfer claim.

### C. Deliberate Indifference

■ On October 30, 2007, this Court entered a Memorandum and Order holding

that the complaint set forth a cognizable claim of deliberate indifference towards the Inmates' safety based on their alleged fear of retribution from other prisoners for performing the installation of security windows. (Doc. No. 6). The Prison Officials contend that the evidence fails to satisfy the requisite standards for sustaining a deliberate indifference claim. (Defs.' Mem. of Law in Supp. of Defs.'s Mot. for Summ. J. 6–7) (Doc. No. 39).

 The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It is well settled that a prisoner's treatment while incarcerated as well as the conditions under which he is confined are subject to Eighth Amendment scrutiny. *Giroux v. Somerset County,* 178 F.3d 28, 31 (1st Cir.1999) (citing *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The protection afforded a prisoner against other prisoners is, like medical care, a "condition" of confinement. *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." *Giroux,* 178 F.3d at 32 (internal citations omitted). Prison officials must take "reasonable measures to guarantee inmates' safety from attacks by other inmates." *Calderon–Ortiz v. LaBoy–Alvarado,* 300 F.3d 60, 64 (1st Cir.2002).

 Nonetheless, "[n]ot every injury suffered by a prisoner at the hands of another results in constitutional liability on the part of prison officials." *Burrell v. Hampshire County,* 307 F.3d 1, 7 (1st Cir.2002). *Farmer* and its progeny set out two tests for sustaining a prison-conditions claim in violation of the Eighth Amend-

ment. *Burrell,* 307 F.3d at 8. First, the alleged deprivation must be objectively serious. *Id.* The prisoner must demonstrate that the conditions of his incarceration pose a "substantial risk of serious harm." *Id.* Second, the prison official must have had "a sufficiently culpable state of mind, namely one of 'deliberate indifference'" to the prisoner's health or safety. *Id.* The requisite state of mind is "more blameworthy than negligence." *Id.* The standard requires "an actual, subjective appreciation of the risk" to inmates that is analogous to the standard for determining criminal recklessness. *Id.* It is axiomatic that prison officials cannot be deliberately indifferent if they are unaware of the risk. *Id.* Including Brown and Shabazz, three prisoners raised concerns about the possibility of retribution from other inmates. Dunton's grievances support Brown and Shabazz's claims that prison officials were aware that the inmate maintenance workers were wary of potential retaliation from their fellow prisoners for being seen installing security measures.

Although the Prison Officials may have known that the inmate maintenance crew was afraid of retribution from other prisoners, however, there is no evidence on the record indicating that any of the crew members who performed the installations were subjected to ominous threats or violence. Brown and Shabazz's allegations fail to identify any threat beyond a general sense of caution or fear of retribution based on the unspecified "heat" they received from other prisoners. Without further detail or supporting evidence, this general trepidation is insufficient to constitute an objectively serious risk of substantial harm.[7] Articulating generalized fears

---

**7.** Prisoners are not precluded, however, from seeking Eighth Amendment protection against future harm. *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)

of violence or retribution may be insufficient to alert prison officials or create a need for administrative protection. *See Oliver v. Vose,* No. 89–1727, 1991 WL 97453, at *2 (D.Mass. May 23, 1991) (Zobel, J.) (the mere fact that the plaintiff was afraid of certain gangs and groups of inmates does not require defendants to provide protection). "[A]n inmate's request for protective custody may be so vague and non-specific that it renders it difficult, if not impossible, for corrections officials to understand the nature of the perceived threat and, as a consequence, the means by which to reduce or eliminate that threat." *De Angelis v. Beaudoin,* No. 04–456, 2008 WL 205211, at *6 (D.N.H. January 22, 2008). Although Brown and Shabazz reasonably may have been concerned about their safety, without any allegations of specific threats, there is no evidence that the refusal to reassign inmate maintenance workers to another job was unreasonable, much less deliberately indifferent to the Inmates' safety.

Therefore, the Prison Officials' motion for summary judgment is granted with respect to the deliberate indifference claims raised by the Inmates.

### D. Loss of Work Privileges

Brown and Shabazz allege that they were coerced into performing a work assignment by threat of demotion and transferral. The Prison Officials contend that prisoners have no constitutional liberty or property right to a prison job or program. Although it may have been improvident for the prison officials to use prisoner maintenance workers to install security features, there is no case law or statutory provision supporting the Inmates' contention that this decision was illegal or constitutes an

unconstitutional use of prison officials' power. Brown and Shabazz's positions as inmate maintenance workers and the correlative benefits they derived from being crew members were privileges not rights. As such, they are unable to sustain a claim alleging a Due Process Clause violation based on the loss of their job and corresponding privileges. *See Dominique v. Weld,* 73 F.3d 1156, 1161 (1st Cir.1996) (holding that "plaintiff's loss of work release privileges did not affect any state-created liberty interest of his, hence did not violate the Due Process Clause").

Accordingly, summary judgment is granted to the Prison Officials with respect to any loss of work claims raised by the Inmates.

### E. Disciplinary Hearings and Sanctions Imposed

■ Brown and Shabazz claim that their due process rights were violated during their disciplinary hearings because they were denied witnesses and documentary evidence. The Prison Officials contend that the Inmates do not have unqualified rights to their requests for witnesses or rebuttal evidence during these proceedings.

Prisoners have the right to due process in disciplinary hearings. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court set forth the minimal procedural safeguards required to satisfy due process in prison proceedings. Due process under *Wolff* requires: 1) advance written notice of the charges at least 24 hours before the hearing; 2) the opportunity to appear at the hearing, to call witnesses and to present rebuttal evidence; and 3) a written state-

---

("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.").

ment by the factfinders as to the evidence relied on for their decision and the reasons for the prison committee's action. 418 U.S. at 564–66, 94 S.Ct. 2963. The Court's review of a prisoner's challenge to the due process deficiencies in a disciplinary hearing is "limited to whether *Wolff*'s minimum protections were met, and whether the written record provided by the fact finder presents 'some evidence' to support the findings made in the disciplinary hearing." *Orwat v. Maloney*, 360 F.Supp.2d 146, 163 (D.Mass.2005) (citations omitted). On this record, the Court has no difficulty identifying evidence to support both of the hearing officer's guilty findings.

Shabazz's disciplinary hearing findings are ably supported by the record, which includes his own admissions. In addition to the disciplinary report and the oral testimony of Shabazz and the reporting officer, the hearing officer considered Shabazz's rebuttal evidence: a letter to the Bay State property manager requesting his property including his legal materials, as well as two drawings he created to represent the windows before and after the security screen installation. (Kennedy Aff., Ex. A–19). The hearing officer determined that Shabazz clearly refused a direct order to install window screens and was guilty. *Id.* Yet, the hearing officer took Shabazz's job loss and disciplinary chronology into account and decided not to sanction Shabazz for the offense. *Id.*

The findings in Brown's disciplinary hearing are also supported by the record. Although Brown pled not guilty and denied the reporting officer's account of their conversation, the hearing officer determined that the preponderance of the evidence established Brown's culpable intent to refuse a work assignment. (Kennedy Aff., Ex. B–19–20). The hearing officer considered the oral testimonies of Brown and prison officers Labouliere and Fallon.

Although Brown denied Labouliere and Fallon's accounts, he testified that he remained silent when Fallon asked him if he was refusing a direct order. *Id.* at B–20. Although Brown had the right to call witnesses, prison officials may, within their discretion, exercise limitations on that right. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff*, 418 U.S. at 566, 94 S.Ct. 2963. The hearing officer denied Brown's requests for testimony from maintenance staff and other prison officials on the basis that it would either be irrelevant, or concur with the hearing officer's ruling. (Kennedy Aff. at B–18–19). The hearing officer did not explain why he denied Brown's request for maintenance staff witnesses. While it would have been helpful to have a reason for the refusal indicated in the record, it is not required for due process. *See Wolff*, 418 U.S. at 566, 94 S.Ct. 2963 (noting that although it would be useful for officials to state the reason for refusing to call a witness, it is not prescribed).

Despite their ardent denials, the evidence against both Shabazz and Brown exceeds the due process threshold for prison hearings. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)(determining that testimony of prison guard and his written report were sufficient to meet the requirements of the Due Process Clause). The Prison Officials' motion for summary judgment is therefore

granted with respect to Shabazz's due process claims.

### F. Equal Protection

Brown and Shabazz allege that they were subject to racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment because they were the only two African–American members of the prisoner maintenance crew. (Compl. # 3). The Inmates claim that the transfer, disciplinary hearings, and sanctions were retaliatory and racially discriminatory in nature.

The Equal Protection Clause mandates that similarly situated persons are to be treated alike absent a rational basis for doing otherwise. To sustain an equal protection claim, Brown and Shabazz must show that "the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that [they] must demonstrate that [their] treatment was not 'reasonably related to [any] legitimate penological interests.'" *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (quoting *Shaw,* 532 U.S. at 225, 121 S.Ct. 1475).

The record does not support a claim of racial discrimination. First, there is no evidence of disparate treatment because there are no other similarly situated prisoners. The Inmates were the only workers who refused to install the screens. Dunton filed grievances challenging the policy but continued to install the screens as directed. Because the Inmates are not similarly situated to their fellow prisoners, their equal protection claim "can be summarily rejected." *Bartolomeo v. Plymouth County House of Corrections,* No. 99–1621, 2000 WL 1164261, at *2 (1st Cir. Aug.16, 2000). Not only do Brown and Shabazz fail to submit any evidence that they received disparate treatment, they offer absolutely no evidence that the treatment they received during their transfers and disciplinary hearings was based on a discriminatory motive.

Accordingly, the Prison Officials' motion for summary judgment regarding the Inmates' equal protection claims is granted.

### III. *CONCLUSION*

Based on the above stated reasons, the Prison Officials' motion for summary judgment is granted as to all claims.

SO ORDERED.