**Lamont CHILDERS, Plaintiff,**

v.

**Michael T. MALONEY, Luis S. Spencer, Brian Flaven, Michael Lyons, and Roger Parent, Defendants.**

**No. CIV.A.02–11823–WGY.**

United States District Court, D. Massachusetts.

March 3, 2003.

Lamont Childers, Bridgewater, MA, Pro se.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

Plaintiff Lamont Childers ("Childers"), an inmate legally incarcerated within the jurisdiction of the Massachusetts Department of Correction, alleges that Massachusetts prison officials Michael Maloney, Luis Spencer, Brian Flaven, Michael Lyons, and Roger Parent (collectively, the "Defendants"), violated his right to due process during a prison disciplinary hearing against him. Specifically, Childers alleges that his right to due process was violated when the Defendants refused to disclose the names or testimony of two confidential informants, failed to set forth

in the record their reasons for concluding that the informants were reliable and had personal knowledge of the matter in question, and did not allow him to call witnesses in his defense. Compl. [Docket No. 1] at 18. The Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for the failure to state a claim upon which relief can be granted [Docket No. 14]. Specifically, the Defendants argue that Childers has not demonstrated that any of his constitutionally protected liberty interests were infringed upon by the outcome of the disciplinary hearing. Defs.' Mem. [Docket No. 15] at 8–13.

## II.  DISCUSSION

### A.  Facts

Construed favorably to Childers, the following facts may be inferred from his complaint. Childers is currently being held at the Old Colony Correctional Center ("Correctional Center"), a prison located in Bridgewater, Massachusetts. Compl. at 1. On January 23, 2002, Childers and another inmate, Dwayne Cruthird ("Cruthird"), were engaged in a legal advisory committee meeting at the Correctional Center's law library. Id. at ¶ 11. An argument ensued between the two regarding case law in an unrelated matter. Id. at ¶ 24. Childers contends that he then left the meeting because his "blood sugar was very low and [the meeting] was loud." Id. at ¶ 25.

Sergeant Flaven subsequently conducted an investigation into the incident. Id. at ¶ 1. On February 9, 2002, Childers was interviewed about the incident and stated that he had argued with Cruthird, but that no physical altercation had occurred. Id. at ¶¶ 1–6. During the investigation, Flaven also obtained information from two confidential informants, whom he referred to as Informants A and B. Defs.' Mem. at 4.

Flaven concluded his investigation on February 14, 2002. Compl., Ex. A. He determined that a physical confrontation had occurred and that Childers had hindered the investigation by claiming that he was not involved in a physical altercation. Id. A disciplinary hearing was scheduled for February 27, 2002, with Corrections Officer Michael Lyons ("Lyons") presiding. Compl. at ¶ 14. For this hearing, Childers sought to call Cruthird and inmate Ray Brooks ("Brooks") as eyewitnesses to the incident. Compl., Ex. B. Lyons denied these requests. Id. at Ex. E. He denied Childers' request to call Cruthird because he believed that since Childers and Cruthird were co-defendants, the possibility of collusion was "too high to allow him [Cruthird] to testify." Id. He denied Childers' request to call Brooks because "Brooks was served with a request for witness form and refused to sign it." Id.

Childers pleaded "not guilty" at the February 27, 2002 hearing. Compl. at ¶ 14. Lyons considered the information provided by the confidential informants in accordance with 103 CMR 430.15 and found it credible and reliable. Compl., Ex. D. The record provided to Childers, however, did not contain the informants' statements, nor did it include a description of the informants' allegations. Compl. at ¶ 56. Lyons prepared an "Informant Information Checklist" in order to document the reliability of each informant. Compl., Ex. D. With respect to Informant A, Lyons wrote that he had dealt with the informant on two previous occasions, that his information had been accurate, that the informant had no grudges against Childers, that the informant was an eyewitness to the event, and that the informant had received no promises or favors in exchange for the information. Id. Lyons documented the identical information with respect to Informant B. Id. Lyons further wrote that

a summary of each informant's information had not been provided to Childers because Lyons believed that the disclosure of such information "would create a substantial risk of identifying the informant." *Id.*

Based on the testimony and informant information, Childers was found guilty of violating a departmental regulation; engaging in conduct that disrupted or interfered with the security or orderly running of the institution; fighting with, assaulting, or threatening another person; and using obscene or abusive language or gestures. Defs.' Mem. at 3. Lyons sanctioned Childers to six weeks' loss of visits, ten days of isolation (suspended for ninety days), and a Classification Status Review. *Id.;, see also* Compl., Ex. C. Pursuant to this status review, Childers was transferred from a level four medium security prison to a level five medium-high security prison. Defs.' Mem. at 10. As a result of this transfer, Childers lost his position as Minority Camp Co–Chairman, a position that had entitled him to 25 days of "earned good time" and reduced his sentence by that corresponding amount. Compl. at ¶ 26; *see also* Pl.'s Supp. Opp. [Docket No. 19] at 2.

Childers appealed the decision and sanctions to the Superintendent of MCI–Norfolk, Luis Spencer ("Spencer"). Compl. at ¶ 20. Spencer ordered that a rehearing be conducted. Compl., Ex. D. On March 12, 2002, a rehearing was conducted with Corrections Officer Parent ("Parent") presiding. Compl. at ¶¶ 33–36. Childers reiterated his version of the events at the rehearing. *Id.* For the same reasons stated above, Childers' request to call Brooks and Cruthird as witnesses was denied. Compl., Ex. E. Childers was again found guilty, and the sanctions were affirmed in order to "impress upon this inmate that at all times, while incarcerated, he is expected to conduct himself within the parame-

ters of what is considered acceptable and appropriate behavior in a correctional setting." *Id.* Childers was given five days to appeal the decision. *Id.*

On March 13, 2002, Childers appealed the decision of the rehearing to Superintendent Spencer. Compl., Ex. G. On March 14, 2002, Childers had library time with inmate Brooks, the witness whom he had desired to call on his behalf. *Id.* at Ex. B. During this meeting, Childers obtained a statement from Brooks that stated, "I never refused to participate as a witness for Mr. Childers.... Officer Lynons [sic] ... brought to my cell, the Request For Witness Form and it had checked off ... 'I decline to participate.'" *Id.* Brooks also claimed that he was never invited by Officer Parent to testify at Childers' rehearing. *Id.*

On March 19, 2002, Superintendent Spencer denied Childers' request for reconsideration. Compl., Ex. J. On April 2, 2002, Childers wrote to the Commissioner of the Department of Corrections, Michael T. Maloney, to express concern over the use of informant information in his disciplinary hearings. Compl., Ex. K. On April 16, 2002, Maloney's office informed Childers that in accordance with 103 CMR 430, his appeals process had ended. *Id.* On August 8, 2002, Childers filed the instant complaint.

### B. Standard of Review

In ruling on a motion to dismiss, a court must not decide questions of fact. The complaint is to be construed in the light most favorable to the plaintiff; dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing whether a complaint should be dismissed pursuant to

Rule 12(b)(6), the Court takes the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990).

## C. Childers' Due Process Claim

■ As the Supreme Court stated in *Wolff v. McDonnell,* prisoners "may claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law." 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, for Childers to succeed in his due process claim, he must show not only that the disciplinary proceeding against him did not meet the applicable due process standards, but also that he was deprived of a protected due process interest as a result.

■ This is a difficult burden. Under the Fourteenth Amendment, an inmate's liberty interest is generally "limited to freedom from restraint ... which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). That being said, a state can, through its own regulations, create liberty interests that are protected by the Due Process Clause. *Id.; see also Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

In the instant case, Childers was disciplined with ten days in isolation, six weeks loss of visitation, and a recommended classification status review. Further, he was transferred from a level four medium security prison to a level five medium-high security prison. Finally, Childers lost his position as Minority Camp Co–Chairman

at MCI–Norfolk, a position which ostensibly entitled him to 25 days "earned good time" that would have reduced his sentence by that amount. The question, therefore, is whether he had a constitutionally protected liberty interest in any of those privileges.

■ Childers' arguments that his liberty interests were infringed by his loss of visitation for six weeks, placement in isolation,[1] and transfer to another prison are foreclosed by previous Supreme Court and First Circuit decisions. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (holding that the Due Process Clause does not give prisoners the right to unfettered visitation); *Sandin v. Conner,* 515 U.S. at 486, 115 S.Ct. 2293 (placing a prisoner in solitary confinement for thirty days did not "work a major disruption in his environment" and thus did not implicate the Due Process Clause); *Dominique v. Weld,* 73 F.3d 1156, 1160 (1st Cir.1996) (transfer of prisoner to a more secure prison did not a constitute an atypical, significant deprivation giving rise to a liberty interest protected by the due process clause).

■ Childers' loss of his position as Minority Camp Co–Chairman presents a slightly more complex question. This position carried with it 25 days of "earned good time" per year, which would reduce Childers' sentence by that corresponding amount. In *Wolff,* the Supreme Court held that a liberty interest exists in "good time credits" that reduce the amount of time a prisoner is to serve, if those credits are a statutory creation of the state. 418 U.S. at 558, 94 S.Ct. 2963. In *Wolff,* however, the Court was protecting a statutorily created right, such as earned good time, from *revocation* by an arbitrary state ac-

---

1. Childers' complaint admits that the sanction of ten days isolation was suspended for ninety days. Compl., Ex. C. Nevertheless, drawing all inferences from the complaint in Childers' favor, the Court infers that this sanction was ultimately imposed.

tion. Here, by contrast, the Defendants have not revoked any of the credits that Childers previously possessed. Rather, as a result of the proceeding, Childers is no longer *eligible* to earn those credits because he is no longer the Minority Camp Co–Chairman. In other words, it is Childers' ability to earn good time credits that has been revoked—not the credits themselves. Thus, the issue is whether Childers held a liberty interest in the way he had previously earned "good time credits"; specifically, the issue is whether Childers had a liberty interest in his former position as Minority Camp Co–Chairman.

█ The First Circuit has held that, absent a state law or regulation to the contrary, inmates have no property or liberty rights under the Due Process clause to obtain or maintain prison jobs. *Dupont v. Saunders,* 800 F.2d 8, 10 (1st Cir.1986). The authority of the Commissioner of Correction to establish work programs in the prisons is set forth in Massachusetts G.L. c. 127, § 148 which provides in pertinent part:

> The Commissioner shall establish and maintain education, training and employment programs for persons committed to the custody of the department . . . . Such programs shall include opportunities for academic education, vocational training, other related pre vocational programs and employment, and may be made available within correctional facilities or, subject to the restrictions set forth in section forty-nine and eighty-six F, at other places approved by the commissioner.

The statutory language does not indicate any limitations on the Commissioner's discretion to suspend or revoke Childers' position as Minority Co–Camp Chairman. This leads directly to the conclusion that Childers did not have a liberty interest in his former position as Minority Camp Co–Chairman.

As such, Childers has not established that the Defendants deprived him of any protected liberty interests in imposing the sanctions described above. As the Supreme Court has explained, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff,* 418 U.S. 539 at 556, 94 S.Ct. 2963, 41 L.Ed.2d 935. As a result, a lawfully committed inmate simply does not possess the same constitutionally protected liberty interests provided to an ordinary citizen. In the instant case, such "mutual accommodation" favors the Defendants, who have considerable discretion within the law when imposing sanctions pursuant to a disciplinary hearing.

## III. CONCLUSION

The plaintiff has not shown that any of his protected liberty interests were infringed by the sanctions against him, and has thus failed to state a claim upon which relief can be granted. Accordingly, the Defendants' Motion to Dismiss [Docket No. 14] is therefore granted.

**SO ORDERED.**