Eric L. HOPKINS, Petitioner,

v.

J. GRONDOLSKY, Respondent.

Civil Action No. 09–11413–JLT.

United States District Court,
D. Massachusetts.

Sept. 15, 2010.

---

**7.** The Court has issued a contemporaneous Order consistent with this Memorandum Opinion.

Eric L. Hopkins, Ayer, MA, pro se.

Eve A. Piemonte–Stacey, Jennifer C. Boal, U.S. Attorney's Office, Boston, MA, for Respondent.

### ORDER

TAURO, District Judge.

This court ACCEPTS and ADOPTS the August 16, 2010 Report and Recommenda-

tion [# 16] of Chief Magistrate Judge Dein. For the reasons set forth in the Report and Recommendation, this court hereby orders that Respondent's Motion to Dismiss Petitioner's Petition for a Writ of Habeas Corpus [# 9] is ALLOWED. This case is CLOSED.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION ON MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

Eric Hopkins ("Hopkins") is incarcerated at FMC Devens, and is serving concurrent 84–month and 168–month sentences for three sexual offenses involving children. Due to the nature of Hopkins' crimes, he is a participant in the Federal Bureau of Prison's ("BOP") Sex Offender Management Program ("SOMP") and has an individualized Correctional Management Plan ("CMP"), which he is obligated to follow. As part of the SOMP, Hopkins is not allowed to possess certain items, including any that, "in the clinical opinion of the SOMP staff, is considered to have the potential to contribute to future sexual offending behavior." *SOMP Inmate Handbook* at p. 5.[1] According to his CMP, Hopkins cannot, among other things, "order, purchase, or request any materials ... that could reasonably be expected to contain pictures or drawings of ... children in bathing suits." *CMP* at p. 2, Restriction e.

---

1. Both parties have submitted numerous documents as part of the habeas petition and memoranda in connection with the motion to dismiss. Since these materials are either expressly referenced in the habeas petition or relate to proceedings referenced in the petition, and are not in dispute, the court will consider the relevant documents in connection with the motion to dismiss.

On November 27, 2007, a search of Hopkins' cell revealed a copy of *Florida Travel & Life* magazine containing photographs of children in bathing suits, a magazine article about myspace.com, and a letter from Radio Disney, all of which the SOMP staff determined to be contraband. An incident report was written, and Hopkins was charged with Refusing a Program Assignment, in violation of Code 306 of the BOP's Prohibited Acts and Disciplinary Severity Scale (codified at 28 C.F.R., Part 541, Subpart B, Table 3). Hopkins was given a hearing before the Unit Discipline Committee where he was found guilty and sanctioned with a 90 day loss of commissary privileges. His administrative appeals were unsuccessful.

Hopkins has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Docket No. 1) challenging the finding of wrongdoing. Specifically, Hopkins is seeking to expunge the incident report, to have the confiscated materials returned, and to revise SOMP policy to acknowledge that "advertising content within publications is beyond the reasonable control of the recipient." Petition (Docket No. 1) at ¶ 16. This matter is before the court on "Respondent's Motion to Dismiss Petitioner's Petition for a Writ of Habeas Corpus." (Docket No. 9). Pursuant to this motion, the Respondent seeks to dismiss the petition pursuant to Fed. R.Civ.P. 12(b)(6) on the grounds that Hopkins has failed to assert a constitutional violation because he has not established that he was deprived of a protected liberty interest. This court agrees. Therefore, and for the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Respondent's Motion to Dismiss (Docket No. 9) be ALLOWED.

## II. *STATEMENT OF FACTS*

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and give the petitioner the benefit of all reasonable inferences. *See Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir.1999). Where, as here, the petitioner is proceeding *pro se*, the court must construe his allegations liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (a *pro se* complaint, however inartfully pleaded, must be liberally construed). Applying these standards to the instant case, the relevant facts are as follows.

Hopkins is incarcerated at FMC Devens, and is currently serving concurrent 84–month and 168–month sentences for three sexual offenses involving children. *Declaration of Cheryl Magnusson ("Magnusson Decl.")* (Docket No. 10–1) at ¶ 3. Specifically, Hopkins pled guilty in the District of Connecticut to Use of an Interstate Facility to Attempt to Persuade a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422(b), and in the Southern District of Florida to Transportation of Child Pornography by Means of a Computer, in violation of 18 U.S.C. § 2252A(a)(1), and Inducing a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing a Visual Depiction Using Material Which Had Been Shipped, Mailed or Transported in Interstate or Foreign Commerce, in violation of 18 U.S.C. § 2251(a). *Id.*

Upon entering FMC Devens in 2005, Hopkins was assigned to participate in the Federal Bureau of Prisons' ("BOP") Sex Offender Management Program ("SOMP"). *Declaration of Diana Schoeller, Psy. D. ("Schoeller Decl.")* (Docket No. 10–5) at ¶¶ 13–14. The SOMP Inmate Handbook states that "[t]he primary goal of the SOMP is to help sexual offenders manage their behavior in order to reduce sexual re-offending" through "intensive su-

pervision and competent treatment." *Id.* at Ex. B, p. 1. As part of the SOMP, participants are not permitted to possess items "that may be used to further a program participant's sexual deviance[.]" *Id.* at 5. This includes, without limitation, pornographic materials; "[a]ny photograph or 'cut out' from any publication of a nude or partially nude adult or child; . . . [a]ny material that depicts, describes, or encourages activities which may lead to violence, sexual crimes, or exploitation; and, [a]ny other material that, in the clinical opinion of SOMP staff, is considered to have the potential to contribute to future sexual offending behavior." *Id.* To enforce this policy, SOMP staff routinely search program participants' cells for contraband. *Id.; see Schoeller Decl.* at ¶ 7.

In January 2007, SOMP staff wrote a Correctional Management Plan ("CMP") for Hopkins, which was amended in April 2007, to further detail prohibited conduct and materials. *Schoeller Decl.* ¶¶ 17–18. Although Hopkins refused to sign the CMP, it was reviewed with him and he did acknowledge that he would be held accountable for complying with the CMP. *Id.* The CMP provided, *inter alia*, that Hopkins was precluded from ordering, purchasing or requesting "any materials that could reasonably be expected to contain pictures of . . . children in bathing suits." *Id.* at ¶ 20.

On November 27, 2007, Hopkins' cell was search by SOMP staff. *Id.* at ¶ 20. During the search, SOMP staff discovered a copy of *Florida Travel & Life* magazine containing advertisements featuring children in bathing suits, a *U.S. News and World Report* article titled "Decoding Myspace," which is a website that SOMP staff considers to be "well-known as a networking site for minors and as a forum for creating false identities[,]" and a letter addressed to Hopkins from Radio Disney, a station which, according to SOMP staff, has "programming aimed at attracting children ages 14 and under[.]" *Id.* at ¶¶ 19–20, & Ex. C. An incident report was written charging Hopkins with Refusing a Program Assignment, in violation of Code 306 of the BOP's Prohibited Acts and Disciplinary Severity Scale (codified at 28 C.F.R., Part 541, Subpart B, Table 3). *Id.* at ¶ 21, Ex. C.

Hopkins was given a hearing before the Unit Discipline Committee ("UDC"). *Id.* at ¶ 22. As Hopkins admits, he vigorously disputed the charges, but the UDC nevertheless convicted him of the charges. *See Schoeller Decl.* Ex. C; *Petitioner's Memorandum ("Pet. Mem.")* (Docket No. 15) at 9–11. He was sanctioned to 90 days loss of commissary privileges. *Schoeller Decl.* ¶ 22. Hopkins proceeded to appeal the UDC decision through the BOP's administrative remedy process, but his appeals were unsuccessful. *Magnusson Decl.* ¶ 7, Ex. E. It is Hopkins' contention that Schoeller misrepresented facts during his hearing, and that the entire incident was in retaliation for other charges that he had successfully disputed. *See Pet. Mem.* at 8–14.

Additional facts relevant to this court's analysis will be described below.

## III. ANALYSIS

### A. Motion to Dismiss Standard of Review

"The Federal Rules of Civil Procedure apply in the context of habeas suits to the extent that they are not inconsistent with the Habeas Corpus Rules." *Woodford v. Garceau,* 538 U.S. 202, 208, 123 S.Ct. 1398, 1402, 155 L.Ed.2d 363 (2003). In the instant case, the parties agree that Fed. R.Civ.P. 12(b)(6) applies.

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.

Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. *Cooperman,* 171 F.3d at 46. Dismissal is only appropriate if the pleadings, so viewed, fail to support " 'a plausible entitlement to relief.' " *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95 (1st Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009). " 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.' " *Id.* (quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)) (internal citations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Ashcroft,* 129 S.Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.' " *Id.* (quoting *Ashcroft,* 129 S.Ct.

at 1950) (internal quotations and citation omitted; alterations in original).

**B. *Hopkins Has Failed to State a Claim Upon Which Relief Can Be Granted***

■ A habeas petition pursuant to 28 U.S.C. § 2241 "generally challenges the *execution* of a federal prisoner's sentence, including such matters as . . . prison disciplinary actions[.]" *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir.2001). Habeas relief is not available "absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir.1995) (quotation omitted).

By his habeas petition, Hopkins "calls into question the criteria used to convict him of the phony offense." *See Pet. Mem.* at 3. While Hopkins never expressly identifies the legal basis for his claim, he is apparently alleging that his due process rights were violated.[2] Thus, Hopkins maintains that the "guidelines set forth by the SOMP are often arbitrary, capricious, and captious and [have] been applied in an unrealistic manner, in the furtherance of a pattern of harassment initiated for the purpose of convicting him of a wrongdoing." *Id.* He asks this court to revise the SOMP policies regarding possession of materials, order the prison to return the magazines and Radio Disney letter, and expunge the incident report from his record. *Id.* at 14. The Respondent, in turn, asks that the court dismiss Hopkins' petition on the grounds that Hopkins' punishment—his loss of commissary privileges for a few

---

**2.** If Hopkins is seeking to base his claim on other constitutional grounds, they are not discernable from the complaint. Based on the facts presented, a violation of due process rights is the only constitutional claim that

could exist. Additionally, the Respondent's motion to dismiss treats Hopkins' petition as raising a due process claim and Hopkins does not object to this characterization.

days—does not constitute the deprivation of a protected liberty interest.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). As such, to succeed in a habeas challenge to a prison disciplinary action on due process grounds, a prisoner must show "not only that the disciplinary proceeding against him did not meet the applicable due process standards, but also that he was deprived of a protected liberty interest as a result." *Childers v. Maloney*, 247 F.Supp.2d 32, 36 (D.Mass.2003). *See also Irving v. Thigpen* 732 F.2d 1215, 1216 (5th Cir.1984) ("neither habeas nor civil rights relief can be had absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.").

In *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the Supreme Court held that an inmate cannot establish a liberty interest subject to due process protection unless the challenged conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Since *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small." *Orwat v. Maloney*, 360 F.Supp.2d 146, 161 (D.Mass.2005) (quotations and citations omitted). "Thus, to the extent that such suits remain viable, it appears so only where the confinement is so extreme as to alter the fundamental terms of an inmate's sentence, or where the procedures employed are so blazingly arbitrary and unfair as to amount to cruel and unusual punishment." *Id.* (quotations

and citations omitted). The temporary loss of privileges as a means of effecting discipline generally is not "a dramatic departure from accepted standards of confinement" and does not constitute the deprivation of a liberty interest. *Overton v. Bazzetta*, 539 U.S. 126, 137, 123 S.Ct. 2162, 2170, 156 L.Ed.2d 162 (2003). *See also Orwat*, 360 F.Supp.2d at 160–61 (no liberty interest involved when prisoner was placed in a segregation unit for eight months); *Childers*, 247 F.Supp.2d at 36 (plaintiff was not deprived a liberty interest by being placed in isolation and sanctioned with a six-week loss of visitation privileges as the result of a prison disciplinary hearing); *Henderson v. Quarterman*, No. C–08–42, 2008 WL 3005476, at *7 (S.D.Tex. Aug. 1, 2008) ("the loss of commissary and recreation privileges are not atypical, significant deprivations that could encroach upon any liberty interest").

Thus, as Hopkins admits, his claim of loss of 90 days of commissary privileges "does not allege the loss of any 'protected liberty interest' in this case." *Pet. Mem.* at 3. Hopkins has failed to establish a violation of his due process rights.

## C. *The Regulations are Acceptable*

Assuming, arguendo, that Hopkins has stated a deprivation of his liberty rights, the motion to dismiss should still be allowed. Hopkins has not stated a basis for revising the SOMP regulations, and his conviction for having contraband was supported by the record.

It is by now well established that sex-offender treatment programs are constitutional. *See Ainsworth v. Stanley*, 317 F.3d 1 (1st Cir.2002). Moreover, "when burdens are laid upon the exercise of constitutional rights by prisons," only "unreasonable burdens are proscribed[.]" *Id.* at 5 (internal punctuation and citations omit-

ted). Here, Hopkins has not met his burden of alleging sufficient facts to establish that the regulations limiting the materials SOMP participants can have were unreasonable, or that the regulations caused an undue burden on his exercise of his constitutional rights.

The regulations are also supportable on the grounds of prison safety and security. As the Supreme Court has recognized:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." (quoting *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974)).

*Bell v. Wolfish,* 441 U.S. 520, 540 n. 23, 99 S.Ct. 1861, 1875 n. 23, 60 L.Ed.2d 447 (1979) (additional citations omitted).

Finally, a decision by a prison disciplinary board to impose a sanction must only be supported by "some evidence" in the record. *See Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). *See also Johnson v. Goord,* 487 F.Supp.2d 377, 382 (S.D.N.Y. 2007) ("The Court is not evaluating the evidence de novo and reaching its own outcome." Rather, the Court must determine if there is "some evidence" to support the ruling of the disciplinary officer). Here, there was an ample basis for the UDC to find that Hopkins had intentionally violated the prohibitions of the SOMP and his CMP by ordering a Florida travel magazine that was likely to have pictures of children in bathing suits, and communicating with media directed at minors. Therefore, Hopkins has failed to state a claim for a violation of his constitutional rights.

## IV. CONCLUSION

For all of the reasons detailed above, this court recommends that the "Respondent's Motion to Dismiss Petitioner's Petition for a Writ of Habeas Corpus" (Docket No. 9) be ALLOWED.[3]

---

**3.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).